**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**RICHMOND DIVISION**

| | |
|---|---|
| BP PRODUCTS ) | |
| NORTH AMERICA INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Civil Action No. 3:13-cv-00718-JAG |
| ) | |
| SOUTHSIDE OIL, L.L.C. and ) | |
| SUNOCO, INC., ) | |
| ) | |
| Defendants. ) | |

**BRIEF IN SUPPORT OF PLAINTIFF'S MOTION TO FILE EXHIBIT 1 TO ITS**
**COMPLAINT UNDER SEAL**

Under Local Civil Rule 5 of the United States District Court for the Eastern District of Virginia, Plaintiff BP Products North America Inc. ("BP"), by counsel, in support of its Motion to File Exhibit 1 to Its Complaint Under Seal, states as follows:

## I.    INTRODUCTION

BP seeks permission to file Exhibit 1 to its Complaint under seal. Exhibit 1 is a September 30, 2005 Purchase and Sale Agreement ("PSA") between BP and defendant Southside Oil, LLC ("Southside"). The PSA contains a provision that requires the parties to keep the PSA confidential, so BP seeks to file the PSA under seal so that it may honor its contractual confidentiality obligation. The parties' interest in maintaining the PSA's confidentiality outweighs whatever minimal public interest in access to the PSA exists. Therefore, the Court should permit BP to file the PSA under seal.

## II.      BACKGROUND

BP is a refiner and distributor of motor fuel throughout the United States.  Southside is a BP-branded jobber[1] who owns and operates retail motor fuel stations and also supplies fuel under supply contracts to stations owned by independent dealers.

In 2005, pursuant to the PSA, BP sold and assigned to Southside the supply rights and associated dealer supply agreements for 24 dealer-owned, dealer-operated BP branded retail sites in or around Richmond, Virginia.  In the PSA, Southside committed to maintaining those sites as BP branded through 2020 and agreed to enter into branded jobber contract(s) and renew its franchise relationship with BP through 2020.  Paragraph 38 of the PSA contains a confidentiality agreement that requires BP and Southside to keep the contents of the PSA and the information relating to the conveyed supply rights and associated dealer supply agreements confidential.

In conjunction with the purchase of retail assets from BP, Southside also entered a series of branded jobber contracts with BP.  These contracts provided that Southside would operate as a BP-branded jobber and purchase BP-branded motor fuel from BP to re-sell either directly through Southside's BP-branded retail stations, or indirectly through a network of BP-branded independent dealers.  As relevant to this action, the most recent branded jobber contract between BP and Southside, the 2010 Branded Jobber Contract ("2010 BJC"), vested in BP a right of first offer ("ROFO").  The ROFO requires Southside to provide BP with a written notice of terms once Southside determines it desires to sell any assets relating to the 2010 BJC so that BP can determine whether it will exercise its right to purchase the assets.  Further, a contract side letter to the 2010 BJC allows Southside to meet its ROFO obligations by providing a right of first

---

[1] Jobbers are wholesalers that purchase BP-branded motor fuel from BP and resell either directly to the public from their own retail sites and/or to independent dealers who, in turn, resell to the motoring public.

refusal to BP ("ROFR"), under the limited circumstances where Southside attempts to sell all of its petroleum business.

On information and belief, on October 3, 2013, defendant Sunoco, Inc. ("Sunoco") acquired Southside, including some or all of retail sites and associated supply rights and related supply agreements, assets that are subject to the 2010 BJC's ROFO/ROFR provisions. Southside never gave BP any notice of the anticipated sale to Sunoco, much less provided BP with the information that Southside is required to provide under the 2010 BJC's ROFO/ROFR provisions.

BP's ROFO/ROFR rights are the contractual provisions centrally at issue in this case. BP attached the 2010 BJC contract side letter to BP's Complaint as Exhibit 2 and Exhibit 3, respectively. BP is not seeking to file either of these exhibits under seal.

## III.    APPLICABLE LAW

Local Rule 5 of the United States District Court for the Eastern District of Virginia requires parties to seek Court approval when filing a document under seal. In determining whether to seal litigation documents, the court must weigh the parties' confidentiality interests against the public interest of open access to judicial documents.

The right of public access to materials filed in civil litigations is derived from two independent sources: the common law, and the First Amendment. *Level 3 Communications, LLC v. Limelight Networks, Inc.*, 611 F.Supp.2d 572, 576 (E.D. Va. 2009). Because BP has not yet offered the PSA as evidence at trial or as part of a dispositive motion, the Court need not consider the more stringent standard implicated with the First Amendment right of access. *See id.* at 579 ("It is … clear that the stronger First Amendment guarantee of public access … applies where efforts are made to seal documents offered into evidence before a court *in the course of a public jury trial*.") (emphasis added); *see also Va. Dep't of State Police v. Wash. Post*, 386 F.3d

567, 580 (4th Cir. 2004) ("we have never held that the public has a First Amendment right of access to a pretrial hearing on a non-dispositive motion or to the transcript of such a hearing.").

Thus, the only applicable right of public access to judicial records applicable here is any relevant common law right.[2]  But the right of access to judicial records by the public "afforded by the common law is weaker than that of the First Amendment.  Courts considering the common law right of access are to apply a balancing test, weighing the interest in confidentiality against the interest in public access." *Stephens v. County of Albemarle*, 422 F.Supp.2d 640, 643 (W.D. Va. 2006) (citing *Nixon v. Warner Communications*, 435 U.S. 589, 589 (1978)).  "If the interests in confidentiality outweigh the interest in public access, the common law presumption in favor of access is rebutted" and the document may be placed under seal.  *Id.* (citing *Stone v. University of Maryland Medical System Corp.*, 855 F.2d 178, 180 (4th Cir. 1988)).

The decision of whether to place a document under seal is within the sound discretion of the district court, and that discretion is "to be exercised in light of the relevant facts and circumstances of the particular case." *Level 3 Communications*, 611 F.Supp.2d at 577 (quoting *Nixon*, 435 U.S. at 589)).  Courts may consider a relatively wide range of private interests in weighing against the public's common law right to access court documents.  *Id.* at 590 (citing *Nixon*, 435 U.S. at 589, 597-98).  For example, this Court has suggested that, even where the stronger presumptive right of public access under the First Amendment is implicated (which it is not here), "cases involving contractual non-disclosure provisions[] might properly be closed (or sealed) by a court in some circumstances."  *Id.* at 583; *see also Publicker Indus., Inc. v. Cohen*,

---

[2] Even should the Court determine that the First Amendment presumption of public access to judicial documents does apply, as discussed below, the Court should permit BP to file the PSA, under seal.  *See*, *Level 3 Communications*, 611 F.Supp.2d at 580 ("even in cases in which non-governmental parties … assert only *private* interests, several courts have also recognized that, in limited circumstances, certain such private interests might also implicate higher values sufficient to override … the First Amendment presumption of public access.") (emphasis in original).

733 F.2d 1059, 1073-74 (3d Cir. 1984) (stating that "unbridled disclosure" of information where a binding contractual obligation not to disclose certain information is implicated would "deprive the litigant of his right to enforce a legal obligation.").

## IV.   ARGUMENT

BP seeks to file the PSA under seal so that BP may comply with its contractual obligation to maintain the confidentiality of the PSA, as set out in Paragraph 38 of the PSA.  BP is seeking to have *only* the PSA sealed, and no other documents, so any limitation to public access implicated by sealing the document is minimal.  As discussed, the contractual terms that will be the central issues in this case, specifically BP's ROFO and ROFR rights, are set forth in the 2010 BJC and the contract side letter, documents BP does not seek to seal.

Any public interest in the PSA is extremely limited.  Typically, the public would have no right to access the PSA, a private contract between two private businesses.  Any right the public may have to access the PSA once it is filed as an exhibit to BP's Complaint only extends to the document's applicability to this litigation.  BP has summarized the PSA as part of its Complaint (*see* Compl. ¶ 12), and that summary is sufficient to satisfy any public interest in the PSA as it relates to this litigation.  BP's strong interest in maintaining the confidentiality of the PSA greatly outweighs any limited public interest in the PSA.  If BP were not permitted to file the document under seal, it would be "deprive[d] … of his right to enforce a legal obligation" for which it had bargained its contract with Southside.  *See Publicker*, 733 F.2d at 1073-74.

One can imagine the potential result if courts did not allow parties to file contract documents containing confidentiality provisions under seal, absent a showing of a strong countervailing public interest.  If that were the case, parties to litigation – whether as plaintiff or

defendant – would be reluctant to introduce confidential contract documents into evidence, and as a result, courts and juries would be deprived of relevant documents.

## V.      CONCLUSION

When considering this motion to seal the PSA, the Court has discretion to balance the public's right of access to judicial documents against the specific confidentiality concerns of the parties.  Here, the parties' interests outweigh the public's interest in disclosure.  Disclosure of the confidential PSA document is more likely to harm the parties than to help the public understand the nature of this case.  For the reasons set forth above, BP moves this Court to permit Exhibit 1 to its Complaint to be filed under seal.

In the alternative, should the Court not permit Exhibit 1 to BP's Complaint to be filed under seal, BP requests leave to withdraw Exhibit 1 from its Complaint filing so that it may honor its contractual obligation under the PSA.

October 25, 2013

Respectfully submitted,

By: _____/s/ Sean M. Golden_____.
James C. Cosby (VSB no. 25992)
jcosby@vanblk.com
Sean M. Golden (VSB no. 76776)
sgolden@vanblk.com
**VANDEVENTER BLACK LLP**
707 East Main Street, Suite 1700
P.O. Box 1558
Richmond, Virginia  23218
Tel: (804) 237-8800
Fax: (804) 237-8801

John E. Petite, *pro hac vice (pending)*
jep@greensfelder.com
Abby L. Risner, *pro hac vice (pending)*
alr@greensfelder.com
**GREENSFELDER, HEMKER & GALE, P.C.**
10 South Broadway, Ste. 2000
St. Louis, MO 63102
Tel: (314) 241-9090
Fax: (314) 345-5465

*Attorneys for Plaintiff BP Products*
*North America Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on the 25th day of October, 2013, I filed the foregoing with the CM/ECF system to serve all registered parties of record and will cause a copy of the foregoing to be mailed to the following persons, who, on information and belief, are not registered with the CM/ECF system:

Otto W. Konrad, Esq.
Kaufman & Canoles
Two James Center
1021 E. Cary Street, Suite 1400
Richmond, VA 23219
*Registered Agent for Southside Oil, LLC*

CSC Corporation Service Company
2595 Interstate Drive, Suite 103
Harrisburg, PA 17110
*Registered Agent for Sunoco, Inc.*

/s/        Sean M. Golden_____
Sean M. Golden (VSB no. 76776)

*4839-7094-5046, v. 2*

7